UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: DEBBIE MORAVEK,                )
                                      )
    Debtor,                            )
                                      )
                                      )    No. 18 C 3482
_____        )
                                      )    Chief Judge Rubén Castillo
APPEAL OF:                             )
                                      )
J. KEVIN BENJAMIN, ESQ.                )
                                      )

## MEMORANDUM OPINION AND ORDER

J. Kevin Benjamin, Esq. ("Benjamin") brings this appeal from an attorney's fee order entered by U.S. Bankruptcy Judge Carol A. Doyle. (R. 1, Notice of Appeal.) For the reasons set forth below, the decision of the bankruptcy court is affirmed.

## BACKGROUND

On January 2, 2018, Debbie Moravek ("Moravek") filed a voluntary Chapter 13 bankruptcy petition. (*In re Debbie Moravek*, No. 18-00048 (Bankr. N.D. Ill. filed Jan. 2, 2018), R. 1, Pet.) Benjamin, a licensed attorney, represented Moravek throughout the bankruptcy case. (*See id.*) On January 3, 2018, Benjamin disclosed the details of his fee arrangement with Moravek; his filing reflected that Moravek had paid him a $4,000 retainer pre-petition and had agreed to pay him an hourly rate of $425 for his work on the bankruptcy case. (*Id.*, R. 6, Fee Disclosure.) On January 23, 2018, Moravek filed various schedules, statements, and a Chapter 13 plan. (*Id.*, R. 14. Schedules; *id.*, R. 15, Statements; *id.*, R. 16, Chapter 13 Plan.) On February 2, 2018, a creditors' meeting was held. (*Id.*, R. 20, Entry.) After several continuances and the filing of amended schedules and plan documents by Moravek, Judge Doyle entered an order on March 27, 2018, confirming Moravek's Chapter 13 plan. (*Id.*, R. 28, Order.) On that same date, Judge

Doyle set the case for a hearing under 11 U.S.C.§ 329(a) "to examine [Benjamin's] fee." (*Id.*, R. 32, Mar. 27, 2018, Hr'g Tr. at 2.)

After Benjamin filed an itemization of his work, the court on May 1, 2018, held a hearing regarding his fee. (R. 11, May 1, 2018, Hr'g Tr. at 1-11.) Benjamin was represented by Theresa Benjamin ("Ms. Benjamin") and the law firm of Benjamin Legal Services, PLC, at that hearing. (*Id.* at 11.) Upon reviewing the itemization, the court found the $7,000 Benjamin had charged his client "outrageous." (*Id.* at 3.) The court stated:

> [A]m I missing something here? This doesn't look complicated to me. There's no big issues. There were no motions filed.[1] . . . So to get to $7,000 in fees to me is outrageous. I mean, I'd use more extreme words than that, but I'll leave it at that. About a thousand dollars of it is her responding to this [order setting the fee hearing] and preparing itemization, which I also find outrageous and completely uncompensable. But I'll tell you what troubled me the most because it's a question of truthfulness. Because I'm going to scale way back.

(*Id.* at 2.) The court then analyzed several entries, including a notation for 0.5 hours for appearing on a motion for an extension of time, which, the court noted, had been granted without a hearing. (*Id.* at 4.) Ms. Benjamin responded, "That may be an error, Your Honor. I apologize for that." (*Id.*) The court stated, "[P]eople make mistakes. But that's . . . not really just a mistake. It's a little more than that." (*Id.*)

Examining another entry for March 6, 2017, which stated that Benjamin had spent time "appear[ing] at the confirmation [hearing]," the court stated, "I don't believe you ever showed up for the confirmation because I had a note . . . to myself . . . . Nobody from your office showed up." (*Id.* at 4.) The court noted another entry for Benjamin having appeared at a second confirmation hearing, even though the court was "virtually certain that nobody appeared at any of those confirmation hearings, so that's three time entries that are false." (*Id.* at 5.) Ms.

---

[1] Judge Doyle noted that Benjamin filed one motion for an extension of time which, in her view, "should have taken about 20 minutes" to prepare and file. (R. 11, May 1, 2018, Hr'g Tr. at 2-3.)

2

Benjamin responded, "I apologize for that, Your Honor." (*Id.*) The court then asked, "How could that happen?" (*Id.*) Ms. Benjamin stated that her firm's billing system automatically created a time entry whenever there was a court date listed on the docket. (*Id.*) The court stated, "Automatically? Wow, that's awful." (*Id.*) Ms. Benjamin replied, "I should have caught that." (*Id.* at 6.) The court then stated, "[O]nce I realize there's charges on anything that I know cannot be legitimate . . . I just no longer have any faith in what's being said on the page. . . . I always assume everybody is honest, straightforward until I have a really good reason to think otherwise. But you gave me three or more good reasons to think otherwise here." (*Id.* at 6-7.)

The court reviewed other entries, including 1.1 hour allegedly spent reviewing a home appraisal, which the court found "utterly unbelievable." (*Id.* at 6.) The court noted several entries for "[d]rafting petition and reviewing documents," which the court found to be "a huge amount of money when we all know those were all just generated on a computer." (*Id.* at 7.) The court found several entries to be proper, including time spent consulting with the client because, in the court's view, "clients don't get enough consultation." (*Id.*) But the court noted other "trumped-up" entries, including time spent to "prepare [the] court file" and similar administrative tasks, which, in the court's view, Benjamin should not have been performing given his "very high hourly rate." (*Id.* at 8.) The court proceeded to examine several other entries that it ultimately deemed to be "false," "unbelievable," or excessive. (*Id.* at 8-9.) The court then concluded:

> [T]he idea of charging $7,000 for what happened here is beyond the pale of anything I've ever seen, and I have been here 19 years. $7,000 for work through confirmation on a simple case is unbelievable . . . [a]nd with the false statements here . . . the most I'm going to allow is $3,000. But I really think it has to be less. There has to be some consequence of those false statements. . . [I]'ve got to say this is extremely troubling[.]

3

(*Id.* at 10.) At the conclusion of the hearing, Judge Doyle awarded Benjamin $2,000 in fees, further ordering that any additional fees taxed against the $4,000 retainer he had received had to be brought to the court for approval. (R. 1-4, Fee Order.)

Thereafter, Benjamin appealed the bankruptcy court's fee order. (R. 1, Notice of Appeal.) On November 7, 2018, Benjamin filed a brief arguing that the bankruptcy court committed reversible error in reducing his fee. (R. 10, Br.) Because there is no appellee in this case, the matter is now fully briefed.

## LEGAL STANDARD

Congress confers jurisdiction on district courts to hear appeals from final orders of a bankruptcy court. 28 U.S.C. § 158(a)(1). On appeal, the bankruptcy court's determinations of law are reviewed *de novo* and its findings of fact for clear error. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015); *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013). The clear error standard is "highly deferential," *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011), and "[w]hen there are two permissible views of the evidence, the [court]'s choice between them cannot be clearly erroneous," *First Weber Grp.*, 738 F.3d at 776 (citation omitted). Reversal under this standard is warranted only if the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted).

## ANALYSIS

On appeal, Benjamin argues that the bankruptcy court abused its discretion in reducing his fee; in his view, the reduction was made solely to punish him for using his own retainer agreement rather than the District's approved retainer agreement, called the "Court-Approved

4

Retention Agreement" or "CARA."² (R. 10, Br. at 12 ("[I]t should be apparent the true reason for so examining the compensation and then denying compensation received pre-petition was to send a message to Appellant, and to chapter 13 debtor's counsel in general, that in using an hourly engagement, rather than the CARA in the ILNB, you risk suffering the consequences in having your fees denied or reduced.")). He further argues that the bankruptcy court lacked authority to examine his fee and had no basis to order the return of his retainer. (*Id.* at 6.) The Court finds no merit to these arguments.

Under 11 U.S.C. § 329, the bankruptcy court is authorized "to assess the reasonable value of the services counsel provided to the debtor and to compare that value with the amount the debtor paid or agreed to pay for the attorney's services." *Matter of Geraci*, 138 F.3d 314, 318 (7th Cir. 1998). "If the court determines that the fee charged by the attorney is excessive—*i.e.*, that it exceeds the reasonable value of the services provided—then it may cancel any compensation agreement between the attorney and his client, or it may order the return of the excessive portion of the fee to the debtor's estate or to the entity making the payment." *Id.* (citing 11 U.S.C. § 329(b).) "Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *Id.* Fee determinations "rest within the sound discretion of the bankruptcy court"

---

² The bankruptcy court has authority to implement standards regarding attorney compensation, including setting presumptively reasonable fees and creating procedures for obtaining them. *Matter of Geraci*, 138 F.3d 318, 321 (7th Cir. 1998). This District has adopted Local Rule 5082-2, which authorizes use of the Court-Approved Retention Agreement, or "CARA," and permits bankruptcy attorneys to obtain a flat fee in Chapter 13 cases without having to submit an itemization of their time and services. *See In re Gilliam*, 582 B.R. 459, 469 (Bankr. N.D. Ill. 2018). The current "flat fee" in this District is $4,000. *Id.*; BANKR. N.D. ILL. L.R. 5082-2(C). These flat fee arrangements have become commonplace in bankruptcy courts throughout the country, as they "allow[] bankruptcy courts to save time and promote judicial efficiency in light of the large amount of consumer cases they have." *Gilliam*, 582 B.R. at 468.

5

and will not be disturbed on appeal unless the court "abused its discretion." *Id.* at 319. An abuse of discretion occurs only when "no reasonable person could agree with the bankruptcy court." *Id.*

The Bankruptcy Code requires that, regardless of whether an attorney is petitioning for fees from the court, "all counsel representing debtors . . . must disclose the details of their compensation arrangements." *In re Gilliam*, 582 B.R. 459, 466-67 (Bankr. N.D. Ill. 2018); *see also* 11 U.S.C. § 329(a) ("Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."). The Federal Bankruptcy Rules and the Local Rules of this District contain further requirements about the timing and substance of such filings. *See generally* FED. R. BANKR. P. 2016(b); BANKR. N.D. ILL. L.R. 2016-1.

"These requirements exist to allow the court to police generally the underlying conflict between the debtor and her counsel as a creditor in the debtor's bankruptcy." *Gilliam*, 582 B.R. at 467. That is because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.R. REP. NO. 595, at § 329 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6285. Bankruptcy attorneys in this District who use the CARA procedures are presumptively entitled to a $4,000 flat fee without having to itemize their work. *Gilliam*, 582 B.R. at 469; BANKR. N.D. ILL. L.R. 5082-2(C). However, the CARA is not required, and other alternate fee arrangements are permissible provided they

comply with other requirements of the Bankruptcy Code. *See* BANKR. N.D. ILL. L.R. 5082-2(C)(2)-(3); BANKR. N.D. ILL. L.R. 2016-1.

At the May 1, 2018, hearing, Judge Doyle recognized that the CARA was not required, and stated that she had approved of alternative fee arrangements in other cases. (R. 11, May 1, 2018, Hr'g Tr. at 4-5.) However, Benjamin's fee caused her concern; he had not used the CARA or submitted any itemization of his work, and he had charged his client well in excess of the $4,000 routinely paid by debtors in straightforward consumer bankruptcy cases in this District. (*Moravek*, No. 18-00048, R. 32, Mar. 27, 2018, Hr'g Tr. at 2; R. 11, May 1, 2018, Hr'g Tr. at 5.) Once Judge Doyle began to scrutinize Benjamin's billing records, she found glaring problems: In effect, Benjamin had charged his client for appearing at three separate hearings at which he did not actually appear. (R. 11, May 1, 2018, Hr'g Tr. at 2-5.) These false entries led her to view Benjamin's other charges with suspicion. (*Id.* at 7.) She proceeded to carefully examine each charge and questioned Benjamin's counsel about her concerns. (*Id.* at 7-11.) Counsel made little attempt to justify any of the questionable charges and instead repeatedly apologized to the court for the "errors." (*Id.* at 5, 6, 11.)

Once a question was raised about Benjamin's fees, it became his burden to establish that the fees he charged his client were reasonable. *Geraci*, 138 F.3d at 318. He has fallen far short of making this showing. In fact, he makes no attempt to justify any of the charges with which Judge Doyle was rightfully concerned, and instead attacks Judge Doyle's motives for examining his fee in the first place. (R. 10, Br. at 6-9.) But Judge Doyle was well within her authority to consider

7

the reasonableness of Benjamin's fee.[3] 11 U.S.C. § 329(b); *Geraci* 138 F.3d at 318. Indeed, "by enacting § 329(b), which assigns to the bankruptcy court the task of determining the reasonable value of services provided by a debtor's attorney, Congress meant to place limits on the role the market will play in setting fees in bankruptcy cases." *Slaton v. Raleigh*, No. 98 C 1605, 1998 WL 684210, at *2 (N.D. Ill. Sept. 18, 1998). The bankruptcy court cannot simply "uphold the price negotiated in the marketplace without determining reasonableness because that would render § 329(b) meaningless." *Id.*

Additionally, the docket supports Judge Doyle's conclusion that Benjamin's $7,000 fee was inflated. The case was pending for a total of four months—nearly two of which were devoted to proceedings related to Benjamin's fee. (*Moravek*, No. 18-00048, R. 1-35.) Other than routine filings generated by a computer and one brief motion for an extension of time, there were no significant proceedings in the case. (*See id.*) As Judge Doyle uncovered at the fee hearing, Benjamin did not even appear at the confirmation hearing. (R. 11, May 1, 2018, Hr'g Tr. at 2-5.) Given Judge Doyle's greater familiarity with this case, and her knowledge of bankruptcy cases generally, the Court cannot conclude that she abused her discretion in determining that Benjamin's fee was excessive related to the issues litigated in the case. *See Geraci*, 138 F.3d at 320 ("[T]he bankruptcy court is authorized to act whenever it determines that the compensation

---

[3] To the extent Benjamin is arguing that Judge Doyle lacked authority to examine his fee because the retainer was paid to him pre-petition, he is incorrect. (*See* R. 10, Br. at 6.) The Bankruptcy Code specifically requires the filing of all attorney fee agreements, including those where payment was made to the attorney up to one year prior to the date the bankruptcy case was filed. *See* 11 U.S.C. § 329(a). Benjamin does not argue or submit evidence showing that he received the retainer more than a year prior to the filing of the bankruptcy case, nor is there anything in the record to suggest that. In fact, the agreement Benjamin submitted to the bankruptcy court, dated less than two weeks before the petition was filed, reflects that payment was made to him "within one year before the filing of the petition in bankruptcy[.]" (*Moravek*, No. 18-00048, R. 6, Disclosure at 1.) The Court also finds no support for Benjamin's suggestion that Judge Doyle could not examine his fee because a portion of the retainer was paid by an undisclosed third party. (*See* R. 10, Br. at 6-7.) Section 329 clearly contemplates scenarios where the attorney's fee was paid by an outside source. *See* 11 U.S.C. § 329(b) (providing that where the court finds the attorney's fee excessive in relation to the services provided, it can order the "return of the excessive portion of the fee to the debtor's estate *or to the entity making the payment*." (emphasis added)).

the debtor has paid or agreed to pay his counsel exceeds the reasonable value of the services provided. No further finding is required."); *Willoughby v. Peterson*, No. 15 C 6719, 2016 WL 890755, at *3-5 (N.D. Ill. Mar. 9, 2016) (affirming bankruptcy court's order requiring attorney to refund his entire retainer fee where the fee was excessive related to the work he had performed); *In re Rodriguez-Guerrero*, No. 93 C 7380, 1994 WL 34257, at *2 (N.D. Ill. Feb. 4, 1994) (affirming bankruptcy court's reduction of attorney's fees because "[r]easonable compensation is not necessarily gauged by the legal services actually rendered, but is measured by the legal services that are necessary under the circumstances" (citation and alteration omitted)).

In addition to the fact that the fee was inflated, Judge Doyle reasonably concluded that Benjamin's fee should be further reduced to sanction him for falsely claiming that he had performed work he did not actually perform. In other words, Benjamin was not "off the hook" simply because Judge Doyle, through a careful inquiry, managed to uncover these troubling billing irregularities.[4] *In re Myers*, No. 11 C 5901, 2012 WL 1988536, at *3 (N.D. Ill. June 1, 2012) (rejecting argument of attorney that bankruptcy court had no authority to sanction him for misconduct where he had agreed to return certain funds to his client, because "[p]utting the cookie back after being caught with your hand in the cookie jar does not explain why you were stealing the cookie in the first place"). Based on the record, Benjamin has failed to establish that "no reasonable person could agree" with the bankruptcy court's order. *Geraci*, 138 F.3d at 318. Therefore, the judgment of the bankruptcy court is affirmed.

---

[4] In fact, Ms. Benjamin's explanation at the May 1, 2018, hearing suggests that Benjamin's law firm routinely charges clients for court appearances and other hearings regardless of whether an attorney actually appears. (R. 11, May 1, 2018, Hr'g Tr. at 5.) Benjamin should consider himself fortunate that Judge Doyle did not order him to refund the entire retainer as a sanction or refer the matter to the District's bar for further inquiry. The Court presumes that he will avoid using this troubling billing practice in future cases litigated in this District.

9

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: November 20, 2018**